## IN THE CIRCUIT COURT FOR BALTIMORE COUNTY

RHONDA AMENU-EL      *
5 Dwelling House Court
Catonsville, MD  21228      *

         Plaintiff,      *

    v.      *

     *

SELECT PORTFOLIO SERVICING      *    CASE NO.: 03-C-17-5760
3815 South West Temple
Salt Lake City, UT  84115      *

         Co-Defendant,      *

Serve Upon:      *

CSC-Lawyers Inc. Services
7 St. Paul Street, Suite 820      *    JURY TIRAL DEMAND
Baltimore, MD  21202
     *

US BANK INC.      *
425 Walnut Street
Cincinnati, Ohio 55402      *

Serve Upon:      *

CSC-Lawyers Inc. Services
7 St. Paul Street, Suite 820      *
Baltimore, MD  21202      *

    *   *   *   *   *   *   *   *   *   *   *   *

FILED 2017 JUN 14 PM 2:41 CLERK OF CIRCUIT COURT BALTIMORE COUNTY

## COMPLAINT

NOW COMES Rhonda Amenu-El (Hereinafter "Plaintiff") by and through her attorney,

John E. Coppock Jr. and hereby file this Complaint against Defendant Select Portfolio Servicing

(Hereinafter "SPS") and Defendant US Bank (Hereinafter "US Bank") and in support thereof

states as follows;

### PARTIES

1.    Plaintiff hereby incorporates the foregoing as if fully stated herein.

2.    Plaintiff is a long-term resident of Baltimore County, Maryland.



DEFENDANT'S EXHIBIT
A

2. Defendant Select Portfolio Servicing ("SPS") is a mortgage servicing company with headquarters in Salt Lake City, Utah and with substantial contacts in the state of Maryland.

4. Defendant US Bank is a financial/mortgage institution with headquarters in Cincinnati, Ohio and with substantial contacts in the state of Maryland.

## 5 DWELLING HOUSE COURT, CATONSVILLE, MARYLAND 21228
(The "subject" property)

5. Plaintiff hereby incorporated the foregoing as if fully stated herein.

6. Plaintiff purchased the subject property (5 Dwelling House Court, Catonsville, Maryland 21228) on March 31, 1994.

7. The original mortgage company was Signet Mortgage.

8. On or about April 11, 1994 an Assignment of Deed was filed transferring the mortgage to Wachovia Mortgage.

9. On or about December 16, 1995 Wachovia Mortgage sold/transferred the mortgage to GE Capital Services.

10. On or about September 23, 1998 GE Capital Services sold/transferred the mortgage to First Horizon Mortgage.

11. Plaintiff refinanced the entire mortgage through Household Finance Company on or about December 11, 2006.

12. As a result of this refinance Plaintiff ended up with two mortgages (80/20%).

13. The smaller of the two mortgages was eventually sold/transferred to the CIM Trust on or about June 30, 2016 and discharged in bankruptcy.

14. The second, larger of the two mortgages, was sold/transferred to Select Portfolio Servicing on or about June 15, 2016.

15. In the last few years Plaintiff has sought a modification of her mortgage through HFC.

16. Plaintiff successfully modified her mortgage through HFC in October of 2013.

17. Unfortunately, after the loan was sold to SPS Plaintiff experienced another financial hardship and sought a modification through her new servicer, SPS.

guidelines. This submission was denied. Plaintiff followed up with other applications for modification but was simply told that they (SPS) "don't' do modifications," or, that they "don't offer HAMP modifications" or, that they "couldn't address her modification requests because she had filed bankruptcy."

19. Plaintiff responded to this by telling SPS that she was willing to reaffirm her account if that would open up the modification process to her. This offer went without a response.

20. Additionally, Plaintiff served a Qualified Written Request (QWR) upon SPS and US Bank with all of the attendant time requirements for a response without an answer.

## FACTS

### A. THE FORECLOSURE & MORTGAGE CRISIS

### THE BANKING INDUSTRY SINCE THE FINANCIAL CRISIS OF 2008

21. Plaintiff hereby incorporates by reference the foregoing as if fully stated herein.

22. The underlying matter involves just one of hundreds of other similar situations across the State where, through no fault of their own, homeowners are wrongfully threatened by knowing and willful mortgage servicing practices which misrepresent, misstate, and/or omit the true facts concerning the actual status of a consumer's loan. In these instances, such as the underlying matter involving SPS, the servicers place their interest above that of the homeowner and unfairly and deceptively ignore their statutory and contractual duties including those which were agreed to as part of their license to legally operate in the State of Maryland.

23. These practices are compounded when homeowners, like Plaintiff in this case, try in good faith to resolve the situation in reliance to their obligations but the servicer (SPS) fails to act in good faith and intends to ignore the serious and material issues and merely willfully blinds itself to true status of the mortgage loan. After reasonable efforts to address their mortgage situation, which is ignored, homeowners like Plaintiff, who have reasonably relied on their

assistance of the Court.

24. The subject practices involved in this action include: (i) SPS's utter failure to timely credit Plaintiff's on-time and complete mortgage payments since they began servicing Plaintiff's mortgage; (ii) SPS's representations to Plaintiff that they do not engage in modifications of mortgages for their clients; (iii) SPS's assertion to Plaintiff that her discharge in bankruptcy makes her ineligible to have her loan modified; (iv) SPS's knowingly false and negative credit reporting of Plaintiff's loan as being in default status to various credit reporting agencies when the loan was actually current (and so remains that way as of the filing of this Complaint); (v) SPS's improper demand for more monies (and failing to properly account for other monies received) than were actually due and owing with the result being Plaintiff's reliance upon SPS's unfair and deceptive demands; (vi) SPS's inadequate responses to Plaintiff's inquiries (QWR dated – 2/6/2017) required under federal and state law with the intent that Plaintiff would rely upon its false and misleading responses; and (vii) SPS's improper threats of foreclosure, with the intent that Plaintiff would pay it more sums not contractually due, when Plaintiff was and has been at all-time relevant in this Complaint current on her mortgage obligation.

25. Had SPS performed the basic services required of a licensed Maryland mortgage servicer in a timely manner, to include legitimate evaluation of properly prepared and submitted mortgage modification applications, and properly responding to written requests for information pertaining to the chain of custody of Plaintiff's mortgage, Plaintiff would not have suffered the damages and losses described herein that are the direct and proximate result of SPS's misrepresentations, misstatements, omissions, and unwise unfair and deceptive acts.

26. Plaintiff's proximate damages and losses caused by SPS for the acts and omissions described herein include: (i) false and incorrect credit reporting to the major credit bureaus that Plaintiff was delinquent or in default on her mortgage loan when she was not; (ii) the improper assessment of late fees and other related charges including, upon information and

belief, those related to force-placed insurance, to her mortgage company which are not owed since Plaintiff has timely made all of her payments since the prior settlement and she is fully insured on her home and property; (iii) costs incurred to make bona fide inquiries to SPS which it simply ignored; and (iv) significant emotional damages, with physical manifestations such as anxiety, stress, frustration, anger, and fear, for her and her family who are being wrongfully threatened with foreclosure and denials of legitimate modification requests while the loan is current.

27.     Over the last nine (9) years, Maryland and the United States have been in the midst of a foreclosure crisis. Recent news reports have established that one in ten American homes is at risk of foreclosure. In response to this crisis and the factors that led to it, the Maryland General Assembly and the Maryland Governor has enacted and signed into law a number of new protections and requirements, including those identified herein, for so-called mortgage professionals and others involved in the mortgage lending process including Defendants SPS and US Bank.

28.     The Court of Appeals has held that in light of these "public policy statements as exemplified by its recent enactments…a stricter adherence to the rules of procedure in mortgage foreclosure sales of residential property is required." *Maddox v. Cohn*, 424 Md. 379, 393, 36 A.3d 426, 434 (2012). The same strict adherence applies to certain mortgage origination practices subject to this action as well.

## B.     THE DEFENDANT'S LEGAL DUTIES RELATED TO THE SUBJECT TRANSACTION

29.     Plaintiff hereby incorporates by reference the forgoing as if fully stated herein.

30.     Under the Maryland common law, SPS owes the Plaintiff a duty of care due to the 'intimate nexus' which exists between the Plaintiff and each of the Defendants who is a licensed real estate professional. This 'intimate nexus' arises from the relation of a customer like the Plaintiff who relies upon the accuracy of the professional's services to her.

31. As a licensed Maryland mortgage lender SPS an US Bank volunteered and agreed to accept as a condition of its license a "duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan" to include a duty to "promptly" provide borrowers with an accounting of their loan when requested and to have "trained" employees on staff to "promptly answer and respond to borrower inquiries."

32. The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to a consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction. *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005).

33. SPS intended that Plaintiff would rely upon its representations and omissions of material fact and that Plaintiff would not only believe whatever representations that were made but also that Plaintiff would do nothing about it.

**COUNT I**
**VIOLATION MARYLAND'S CONSUMER PROTECTION ACT ("MCPA"),**
**Md. Code Ann., Com. Law §13-101 *et seq.***
**&**
**MARYLAND'S CONSUMER DEBT COLLECTION ACT ("MCDCA")**
**Md. Code Ann., Com. Law § 14-201**

34. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

35. The mortgage loan servicing and origination practices described herein related to SPS, as set forth herein, are governed by the Consumer Protection Act, Md. Code Ann., Com. Law. § 13-101, et seq.

36. Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The mortgage servicing and collection of Plaintiff's mortgage payments by SPS and the threatened foreclosure involves both the extension of credit and the collection of consumer debts.

37. Section 13-303 also prohibits unfair or deceptive trade practices in the sale or provision of consumer services, such as those performed by SPS.

38. The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following:

> (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

> Md. Code Ann., Com. Law § 13-301(1) and (3)

39. SPS failed to state material facts directly and indirectly through authorized agents and employees or otherwise misstated, misrepresented, or omitted the true facts concerning or related to the status of Plaintiff's loan that tended to deceive and did in fact deceive Plaintiff in violation of Md. Code Ann., Com. Law § 13-301(3).

40. SPS's deception, fraud, false premise, misrepresentations, and knowing concealment and omission of material facts from Plaintiff with the intent that she rely upon the same during the serving of his loan and related consumer services also violated Md. Code Ann., Com. Law § 13-301(9). It is unreasonable to conclude that a licensed mortgage servicer does not intend for its customers to rely upon the statements and letters it sends to them about their account—especially when the servicer refuses to acknowledge its errors but simply ratifies them by its continued conduct like SPS in this matter.

41. Plaintiff reasonably relied upon the material acts, actions and omissions of SPS. SPS also intended for Plaintiff to rely upon its promises, misstatements, omissions, and misrepresentations as described *supra*.

42. Had the SPS not acted unfairly and deceptively, Plaintiff would not have suffered the damages and losses that she has proximately sustained.

43. Plaintiff has pled sufficient facts to put SPS on notice as to the claims against it even though they were simply ignored.

required by Md. Code Ann., Com. Law § 13-316(c) since its response never answered the actual inquiry that Plaintiff queried about in the first place.

45. A violation of the MCDCA is also a *per se* violation of the MCPA. Md. Code Ann., Com. Law § 13-301(14)(iii).

46. The MCDCA prohibits "[i]n collecting or attempting to collect an alleged debt" by a collector such as SPS any "[c]claim, attempt, or threat[] to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8).

47. SPS, directly and indirectly, claimed certain sums (i.e. invalid debts) due from Plaintiff that it knew were not in fact due and owing. At all times relevant herein Plaintiff was current on her mortgage (as modified by HFC) and there was no basis whatsoever for SPS to threaten Plaintiff or deny Plaintiff the opportunities provided for in the passing of reams of state and federal legislation in the wake of the financial/mortgage crisis.

48. SPS's conduct and omissions, as set forth above, had the capacity, tendency or effect to deceive and unfairly or deceptively harm Plaintiff, who has suffered economic and non-economic damages (including emotional distress and mental anguish).

**WHEREFORE**, Plaintiff respectfully requests the Court enter judgment pursuant to the MCPA and/or MCDCA in favor of Plaintiff and against SPS and US Bank for actual damages and losses (including economic and non-economic) of not less than $125,000; costs and attorney's fees incurred by Plaintiff; and grant Plaintiff such other and further relief as this court finds necessary and proper.

## COUNT II
### VIOLATION OF THE MARYLAND MORTGAGE FRAUD PROTECTION ACT,
Md. Code Ann., Real Prop. §§ 7-401, et seq.
(Against Both Defendants)

49. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

The Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. § 7-401, et. seq., governs the relationship between Defendants SPS and US Bank and Plaintiff.

51. Md. Code Ann., Real Prop. § 7-401(c) provides: "Homeowner" means a record owner of residential real property. The Plaintiff is record owner of the Property in question and is therefore a Homeowner.

52. Md. Code Ann., Real Prop. § 7-401(e) provides: "Mortgage lending process... include[s] [t]he solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan."

53. Md. Ann. Code, Fin. Inst. § 11-501(l) provides: "'Mortgage loan' means any loan or other extension of credit that is: (i) secured, in whole or in part, by any interest in residential real property in Maryland; and (ii) for personal household or family purposes, in any amount."

54. The MMFPA works to protect the interests of all parties to mortgage transactions in Maryland from misstatements, misrepresentations and omissions. In this instance, the MMFPA works to protect borrowers like Plaintiff from mortgage companies and so-called professionals like SPS to ensure a level, fair playing field between all borrowers and professionals.

55. The Plaintiff is a homeowner in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the negotiation and servicing of her residential mortgage loan with SPS.

56. Md. Code Ann., Real Prop. § 7-401(d) provides:

"Mortgage fraud" means any action by a person made with the intent to defraud that involves:

1. Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;
2. Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.
3. Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;

57. SPS's knowing conduct and intention to defraud Plaintiff is demonstrated by its: bad faith, absence of good faith and fair dealings, their breach of the duty owed to their customers as illustrated herein, their dishonest statements and reckless indifference to the truth, their deliberate disregard for the consequences that befall their customers and their willful refusal to know and act upon the true facts.

58. As a result of SPS's knowingly deceptive and untrue communications and misstatements and omissions, Plaintiff has suffered economic and noneconomic damages.

**WHEREFORE**, Plaintiff respectfully requests the Court enter judgment pursuant to the MMFPA in favor of Plaintiff and against Defendant for: actual damages of not less than $125,000; treble damages against the Defendant pursuant to Md. Code Ann., Real Prop. § 7-406(c), costs and attorney's fees incurred by Plaintiff; and grant Plaintiffs such other and further relief as this court finds necessary and proper.

## COUNT III
### Negligence

59. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

60. SPS and Us Bank owed Plaintiff multiple duties of care in the servicing of her mortgage loan.

61. SPS negligently serviced and represented the true status of Plaintiff's loan and the options available to her when experiencing financial hardship thus breaching those duties and inflicting damages upon Plaintiff as a direct result of those breaches.

62. If the fact finder finds that the various statements, omissions, and representations of SPS as described herein were not intentional, knowing, and/or willful but finds instead they were negligent, Plaintiff suffered damages as a proximate result of SPS's negligent acts and omissions.

**WHEREFORE**, Plaintiff respectfully requests the Court alternatively to the relief request in Counts I, II, and V enter judgment in favor of Plaintiff and against Defendant for its

negligence in the sum of ; actual damages of not less than $125, , costs and attorney's fees incurred by Plaintiff; and grant Plaintiffs such other and further relief as this court finds necessary and proper.

**COUNT IV**
**VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT,**
**12 .S.C.A. § 2605, 12 C.F.R. § 1024.35**

63.     Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

64.     SPS was required to respond to Plaintiff's Qualified Written Request within five days of receipt of the letter. 12 U.S.C.A. § 2605(e)(1)(A). However, SPS failed to timely acknowledge receipt of the Plaintiff's QWR even though Plaintiff's QWR had sufficient information for SPS to identify the loan subject to the request.

65.     SPS was required to investigate Plaintiff's notice of error. 12 C.F.R. § 1024.35(e)(1)(i).   However, by its utter lack of a response, SPS obviously failed to do any investigation and instead knowingly elected to ignore Plaintiff as they had done since she initiated contact with them.

66.     SPS was required to reply to Plaintiff's QWR and notify Plaintiff of that in writing. 12 U.S.C.A. § 2605(e)(2)(A). However, SPS failed to do so.

67.     Upon information and belief SPS has a pattern and practice of noncompliance with the requirements of 12 U.S.C.A. § 2605 for borrowers like Plaintiff as well as a failure to apologize for its errors.  This belief is based Plaintiff's personal experience with SPS and is also based upon public complaints, reports, and investigations of SPS by various state and federal agencies.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment in favor of Plaintiff and against Defendant for its violations of 12 U.S.C.A. § 2605 and implementing regulations in the sum of his actual damages of not less than $125,000, statutory damages in the sum of $2,000, costs and attorney's fees incurred by Plaintiff; and grant Plaintiffs such other and further relief as this court finds necessary and proper.

Respectfully Submitted,

John E. Coppock Jr.
433 Overbrook Road
Catonsville, MD  21228
410-459-2303

*Attorney for Plaintiff*

## REQUEST FOR A TRIAL BY JURY

**PLAINTIFF HEREBY REQUESTS** a trial by a jury of her peers.

John E. Coppock Jr.

FILED

2017 JUN 14  PM 2: 41

CIRCUIT COURT
BALTIMORE COUNTY