# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

RHONDA AMENU-EL,

    Plaintiff,

       v.                          Civil Action No. RDB-17-2008

SELECT PORTFOLIO
SERVICES, *et al.*,

    Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

Plaintiff Rhonda Amenu-El ("Plaintiff") brought this four count Complaint against Defendants Select Portfolio Servicing ("SPS") and U.S. Bank, N.A.[1] (collectively, "Defendants") alleging violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code. Ann., Com. Law § 13-101, et seq. (Count I), the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 (Count I), the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. §§ 7-401, et seq. (Count II), negligence (Count III), and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.A § 2605, 12 C.F.R. § 1024.35 (Count IV). Currently pending before this Court is Defendants' Motion to Dismiss (ECF No. 7.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion to Dismiss (ECF No. 7) is GRANTED.

---

[1] Plaintiff incorrectly names "U.S. Bank Inc." as Defendant in her Complaint. (ECF No. 2.) As reflected *supra*, U.S. Bank, N.A. is the Defendant's correct name. *See* Mot. to Dismiss, ECF No. 7. The Clerk of this Court is directed to re-caption this case accordingly.

## BACKGROUND

This Court accepts as true the facts alleged in Plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F. 3d 388, 390 (4th Cir. 2011). In 1994, with mortgage financing, Plaintiff purchased property in Catonsville, Maryland. (Compl., ECF No. 2 at ¶¶ 6-10.) In 2006, as a result of financial hardship, Plaintiff refinanced her loan through Household Finance Company (HFC). (*Id.* ¶¶ 11, 17.) The refinancing resulted in two mortgages, which Plaintiff again refinanced through HFC in 2013. (*Id.* at ¶¶ 13, 16.) In 2016, the smaller mortgage was discharged in bankruptcy and the larger mortgage was assigned to U.S. Bank N.A., with Select Portfolio Servicing ("SPS") as its mortgage servicer. (*Id.* at ¶¶ 13, 14.)

After experiencing additional financial hardship, Plaintiff sought a third loan modification.[2] (*Id.* at ¶ 17.) SPS, the current servicer of her loan, denied her request. (*Id.* at ¶ 18.) Plaintiff allegedly requested to modify her loan multiple times, but was told that SPS does not "do modifications," does not "offer HAMP modifications," or "couldn't address her modification requests because she had filed bankruptcy." (*Id.*) SPS also failed to respond to Plaintiff's offer to reaffirm her account if that would lead to modification. (*Id.* at ¶ 19.) In addition, Plaintiff alleges both that she filed a Qualified Written Request (QWR) that went unanswered, *Id.* at ¶ 20, and that SPS inadequately responded to a QWR. (*Id.* at ¶ 24.)

---

[2] In Paragraph 18 of the Complaint, Plaintiff states that SPS responded in part by saying they "don't offer HAMP modifications." The Home Affordable Modification Program (HAMP) is a federal program established in light of the 2008 financial crisis by the Secretary of the Treasury under authority granted in the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765. While the Program was designed to assist homeowners at risk of foreclosure by creating incentives for mortgage servicers to enter into Trial Period Plans with eligible homeowners to potentially lead to a permanent loan modification of mortgage terms, there is no right to a HAMP modification. *Gibbs v. Bank of America, N.A.*, No. GLH-16-2855, 2017 WL 1214408, at *9 (D. Md. Mar. 31, 2017) (citing *Gibson v. Nationstar Mortg., LLC,* No. GJH-14-03913, 2015 WL 302889, at *2-3 (D. Md. Jan. 21, 2015)).

Plaintiff claims that her situation is another example of when "through no fault of [her] own, homeowners are wrongfully threatened by knowing and willful mortgage servicing practices which misrepresent, misstate, and/or omit the true facts concerning the actual status of a consumer's loan." (*Id.* at ¶ 22.) These mortgage serving practices include:

> (i) SPS's utter failure to timely credit Plaintiff's on-time and complete mortgage payments since they began servicing Plaintiff's mortgage; (ii) SPS's representations to Plaintiff that they do not engage in modifications of mortgages for their clients; (iii) SPS's assertion to Plaintiff that her discharge in bankruptcy makes her ineligible to have her loan modified; (iv) SPS's knowingly false and negative credit reporting of Plaintiff's loan as being in default status to various credit reporting agencies when the loan was actually current …; (v) SPS's improper demand for more monies …; (vi) SPS's inadequate responses to Plaintiff's inquiries (QWR dated 2/6/2017) required under federal and state law with the intent that Plaintiff would rely upon its false and misleading responses; and (vii) SPS's improper threats of foreclosure, with the intent that Plaintiff would pay it more sums not contractually due, when Plaintiff was and has been at all-time relevant in this Complaint current on her mortgage obligation.

(*Id.* at ¶ 24.) Had SPS "performed the basic services required of a license Maryland mortgage servicer in a timely manner," Plaintiff claims she would not have suffered damages and losses. (*Id.* at ¶ 25.) Those damages and losses include false and incorrect credit reporting, improper assessment of late fees and other related charges, costs incurred to make bona fide inquiries to SPS, and significant emotional damages. (*Id.* at ¶ 26.) Plaintiff brought the instant suit in the Circuit Court of Maryland for Baltimore County. Subsequently, Defendants removed this action before this Court based on federal question jurisdiction pursuant to §§ 28 U.S.C. 1332, 1441, and 1446. (ECF No. 5.)

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) "require that complaints in civil actions be alleged with greater specificity than previously was required." While a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Iqbal*, 556 U.S. at 678.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b). The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). A court "should hesitate to dismiss a complaint under Rule 9(b) if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

## ANALYSIS

As a preliminary matter, part of the factual basis for Plaintiff's Complaint stems from SPS's denial of her third loan modification, which Plaintiff indicates was a request under the

Home Affordable Modification Program (HAMP). (ECF No. 2 at ¶ 18.) In their Motion to Dismiss, Defendants correctly note that there is no right to a HAMP modification. *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 917 (D. Md. 2012); *Gibbs v. Bank of America, N.A.*, No. GLH-16-2855, 2017 WL 1214408, at *9 (D. Md. Mar. 31, 2017) (citing *Gibson v. Nationstar Mortg., LLC,* No. GJH-14-03913, 2015 WL 302889, at *2-3 (D. Md. Jan. 21, 2015)). As the United States District Court for the Eastern District of Virginia has explained, courts "universally reject" claims of entitlement to permanent loan modifications under HAMP "on the ground that HAMP does not create a private cause of action for borrowers against servicers and lenders." *Bourdelais v. JPMorgan Chase*, No. 3:10-CV670-HEH, 2011 WL 1306311, at *3 (E.D. Va. Apr. 1, 2011); *see also Ramos v. Bank of America,* No. DKC-11-3022, 2012 WL 1999867, at *3 (D. Md. June 4, 2012) ("'It is true that Congress did not create a private right of action to enforce the HAMP guidelines.'" (quoting *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *8 (D. Md. Aug. 4, 2011))).

### I. Maryland Consumer Protection Act Claim (Count I)

The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices." Md. Code Ann., Com. Law § 13-301. To bring an MCPA claim, a consumer must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d. 754, 768 (D. Md. 2012) (citing *Lloyd v. General Motors Corp.*, 397 Md. 108, 143, 916 A.2d 257 (2007)). Because an MCPA claim sounds in fraud, it must be plead with particularity. *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013); *Robinson v. Nationstar Mortgage*

*LLC*, No. TDC-14-3667, 2015 WL 4994491, at *4 (D. Md. Aug. 19, 2015) (citing *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013)).

Plaintiff claims that "SPS failed to state material facts directly and indirectly through authorized agents or employees or otherwise misstated, misrepresented, or omitted the true facts concerning or related to the status of Plaintiff's loan," in violation of Sections 13-301 and 13-303. (ECF No. 2 at ¶ 39.) As this Court explained in *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452 (D. Md. 2013), a plaintiff bringing an MCPA claim is "required to allege the 'time, place, and contents of the false misrepresentations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* at 465 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)); *see also Gibson v. Nationstar Mortgage, LLC*, No. GJH-14-03913, 2015 WL 302889, at *3 (D. Md. Jan. 21, 2015) (dismissing the plaintiff's MCPA claim for failing to "indicate the time, place, or content of the alleged misrepresentations" and "the 'material fact' that Defendant allegedly failed to disclose"). In *Marchese*, the plaintiff's MCPA claim survived a motion to dismiss after the plaintiff "identified at least six contradictory written communications" that had the tendency to deceive or mislead the plaintiff about his status under a trial period plan program. 917 F. Supp. at 466.

Unlike the plaintiff in *Marchese*, Plaintiff does not provide any factual allegations concerning the alleged false misrepresentations. Nowhere in the Complaint or Response to Defendants' Motion to Dismiss does Plaintiff allege who the authorized agents or employees who made the misrepresentations were, the contents of the misrepresentations, or when and in what context they were made. In addition, Plaintiff only makes conclusory allegations that

6

she relied upon these misrepresentations "during the servicing of h[er] loan and related consumer services." (ECF No. 2 at ¶ 40.) *See Gibson*, 2015 WL 302889 (finding that even if the plaintiff had plead sufficient facts to support that there were misrepresentations, his claim would still fail because he did not allege facts sufficient to show he relied on the misrepresentations). Therefore, plaintiff has failed to adequately plead her MCPA claim.

## II.     Maryland Consumer Debt Collection Act Claim (Count II)

The Maryland Consumer Debt Collection Act ("MCDCA") prohibits a debt collector from "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law §§ 14-202(8). To succeed on an MCDCA claim, a plaintiff "'must set forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so.'" *Healy v. BWW Law Group, LLC*, No. PWG-15-3688, 2017 WL 281997, at *5 (D. Md. Jan. 23, 2017) (quoting *Lewis v. McCabe Weisberg & Conway,* No. DKC 13-1561, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014)). Like an MCPA claim, an MCDCA claim is subject to the heightened pleading standard. *Adle-Watts v. Roundpoint Mortgage Servicing Corp.*, No. CCB-16-400, 2016 WL 3743054, at *5 (D. Md. July 13, 2016) ("[T]he court is not convicted that [the plaintiff] has shown, especially under the heightened pleading standard of Rule 9(b), that the defendants acted with 'actual knowledge or reckless disregard' that the debt was invalid."); *see also Healy*, 2017 WL 281997, at *2 (noting that the heightened pleading standard applied to all of the plaintiff's claims, including one under the MCDCA).

7

In support of her MCDCA claim, Plaintiff asserts that "SPS, directly and indirectly, claimed certain sums (i.e. invalid debts) due from Plaintiff that it knew were not in fact due and owing" and "improper[ly] demanded more moneys (and failing to properly account for other monies received) than were actually due and owing." (ECF No. 2 at ¶¶ 24, 47.) Subsequently, "there was no basis whatsoever for SPS to threaten Plaintiff or deny Plaintiff the opportunities provided for in the passing of reams of state and federal legislation in the wake of the financial/mortgage crisis." (*Id.* at ¶ 47.) Defendants move to dismiss on the grounds that Plaintiff's allegations are insufficient to establish an MCDCA violation.

In *Stewart v. Bierman*, 859 F. Supp. 2d 754 (D. Md. 2012), this Court dismissed the plaintiffs' MCDCA claim after the plaintiffs "fail[ed] to allege any facts that demonstrate that [the defendants] had knowledge that the right to initiate foreclosure proceedings did not exist." *Id.* at 769. The plaintiffs appealed the dismissal of their MCDCA claim to the United States Court of Appeals for the Fourth Circuit, and the Fourth Circuit affirmed. *Lembach v. Bierman*, Nos. 12-1723, 12-1746, 528 Fed. App'x. 297 (4th Cir. 2013). Citing this Court, the Fourth Circuit explained that "Maryland Courts have consistently interpreted the MCDCA to require plaintiffs to allege that defendants acted with knowledge that the 'debt was invalid, or acted with reckless disregard as to its validity,'" quoting *Shah v. Collecto, Inc.*, No. DCK 2004-4059, 2005 WL 2216242, at *11 (D. Md. Sept. 12, 2005), and the plaintiffs had "fail[ed] to show any evidence that [the defendants] had any reason to doubt the validity of the debt." *Lembach*, 528 Fed. App'x. at 304; *see also Pugh v. Corelogic Credico, LLC*, No. DKC-13-1602, 2013 WL 5655705 (D. Md. Oct. 16, 2013) (dismissing the plaintiff's claim when the plaintiff "recite[d] the applicable statutory language, but fail[ed] to plead any factual allegations to

8

support his legal conclusions"); *Lupo v. JPMorgan Chase Bank, N.A.*, No. DKC-14-0475, 2016 WL 3459855, at *13 (D. Md. June 24, 2016) (ruling on a motion for summary judgment, but citing *Bierman* to explain that at the motion to dismiss stage, a plaintiff's MCDCA claim fails when the plaintiff "merely recite[s] the statutory language"). Similarly, Plaintiff recites the applicable statutory language without offering any factual support for her MCDCA claim. Therefore, her claim fails.

### III. Maryland Mortgage Fraud Protection Act Claim (Count II)

The Maryland Mortgage Fraud Protection Act (MMFPA) broadly states that "[a] person may not commit mortgage fraud." The sections of the statute that Plaintiff cites define mortgage fraud as:

> (1) Knowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;
> (2) Knowingly creating or producing a document for use during the mortgage lending process that contains a deliberate misstatement, misrepresentation, or omission with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process; [and]
> (3) Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process[.]

Md. Code. Ann., Real Prop. § 7-401(d)(1-3); (ECF No. 2 at ¶ 56). As this is also a claim sounding in fraud, plaintiff needed to allege her MMFPA claim with particularity. *Moss v. Ditech Fin., LLC*, No. PWG-15-2065, 2016 WL 4077719, at *2 (D. Md. Aug. 1, 2016).

Plaintiff claims that "SPS's knowing conduct and intention to defraud Plaintiff is demonstrated by its: bad faith, absence of good faith and fair dealings, their breach of the

9

duty owed to their customers…, their dishonest statements and reckless indifference to the truth, [and] their deliberate disregard for the consequences that befall their customers." (ECF No. 2 at ¶ 57.) However, as this Court explained in *Zervos v. Ocwen Loan Servicing, LLC*, No. 1:11-cv-03757-JKB, 2012 WL 1107689 (D. Md. Mar. 29, 2012), a plaintiff's MMFPA claim cannot survive a motion to dismiss when the plaintiff does not plead "the details of the alleged fraudulent representations" or allege any "facts evincing that [the defendant] had knowledge of the statements' falsity or intent to defraud." *Id.* at *5. In that case, this Court also noted that the plaintiff did "not allege what [the defendant] gained or attempted to gain by making the alleged misrepresentations" or allege any facts "from which the Court c[ould] infer an intent to defraud." *Id.* Similar to Plaintiff's MCPA and MCDCA claims, Plaintiff has failed to provide any factual support for her MMFPA claim. Therefore, this claim fails.

## IV. Negligence claim (Count III)

Plaintiff also claims that Defendants breached multiple duties of care owed to Plaintiff while servicing her mortgage loan. Specifically, Plaintiff alleges that "SPS negligently serviced and represented the true status of Plaintiff's loan and the options available to her when experiencing financial hardship." (ECF No. 2 at ¶ 61.) To succeed on a negligence claim, a plaintiff must prove that the defendant owed a duty to him or her. *Washington Metropolitan Area Transit Authority v. Seymour*, 387 Md. 217, 223, 874 A.2d 973, 976 (2005). Courts have repeatedly held, however, that a mortgage servicer does not owe a duty of care to a borrower; rather, the relationship is contractual. *See Bowers v. Bank of America, N.A.*, 905 F. Supp. 2d 697 (D. Md. Nov. 27, 2012) (dismissing the plaintiff's breach of duty, care and trust claim against his mortgage servicer because "'it is well established that the relationship

10

of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature'" (quoting *Kuechler v. People's Bank*, 602 F. Supp. 2d 625, 633 (D. Md. 2009))); *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 274 (D. Md. 2015) (dismissing the plaintiff's negligence claim against its mortgage servicer in part because a mortgage servicer does not owe a tort duty to its loan customer). Therefore, Plaintiff has failed to show Defendant SPS owed her a duty.

To the extent Plaintiff attempts to make a negligent breach of contract claim, Plaintiff's claim fails for two reasons. First, the claim fails because negligent breach of contract is not enough to sustain a tort action when the law does not independently impose a duty or obligation. *Chesapeake Bay Foundation, Inc. v. Weyerhaeuser Co.*, No. PWG-11-47, 2015 WL 2085477, at *6 (D. Md. May 4, 2015) (citing *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 515 A.2d 756 (Md. 1986)). Second, the claim also fails because Plaintiff has not pointed to a specific contractual term that has been breached. *Thompson v. Countrywide Home Loans Servicing, L.P.*, No. L-09-2549, 2010 WL 1741398, at *3 (D. Md. Apr. 27, 2010) ("[Plaintiff] also alleges that [Defendant] breached the servicing contract by misleading him about loan modification programs. . . [Plaintiff], however, has not alleged the terms of the contract at issue with any specificity.").

Finally, to the extent Plaintiff alleges that Defendants have acted in bad faith, ECF No. 2 at ¶ 57, Maryland does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing. *Bowers*, 905 F. Supp. at 703. For these reasons, Plaintiff's negligence claim fails.

### V. Real Estate Settlement Procedures Act Claim (Count IV)

Plaintiff's final claim is that Defendant SPS failed to timely acknowledge receipt of Plaintiff's Qualified Written Request (QWR) and failed to investigate Plaintiff's notice of error, in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.A § 2605, 12 C.F.R. § 1024.35. (ECF No. 2 ¶¶ 64-65.) To prevail on this RESPA theory, a plaintiff "'must demonstrate that the defendant was responsible for the servicing of the plaintiff's loan; the defendant received a valid Qualified Request from the plaintiff that relates to the servicing of a mortgage loan; the defendant failed to respond adequately; and the plaintiff is entitled to actual or statutory damages.'" *Lindsay v. Rushmore Loan Mgt., Services, LLC*, No. PWG-15-1031, 2017 WL 1230833, at \*8 (D. Md. Apr. 4, 2017) (quoting *Martins v. Wells Fargo Bank, N.A.*, No. CCB-16-1070, 2016 WL 7104813, at \*3 (D. Md. Dec. 6, 2016)).

In paragraph 20 of the Complaint, Plaintiff alleges that she "served a Qualified Written Request (QWR) upon SPS and US Bank with all of the attendant time requirements for a response without an answer." (ECF No. 2 at ¶ 20.) She does not attach a copy or provide any additional information about this request. Four counts later, Plaintiff contradicts herself, claiming that SPS did respond to a QWR dated 2/6/2017, but that its response was inadequate. (*Id.* at ¶ 24.) To the extent that Plaintiff's RESPA claim rests on the 2/6/2017 QWR, then her claim fails because she alleges that SPS did respond.

If Plaintiff's RESPA claim rests on other QWRs to which SPS did not respond, she has failed to factually support this allegation. The United States District Court for the District of Virginia recently dismissed a similar RESPA claim in *Vuyyuru v. Bank of America, N.A.*, No. 3:16CV638-HEH, 2017 WL 1740020 (E.D. Va. May 3, 2017). In that case, the court explained that "[c]onspicuously absent from Plaintiff's bald assertions are facts." *Id.* at

12

*4. "[The plaintiff] neither offers specific information related to the letter's request, nor attaches to his Complaint any communication claiming to be that qualified written request." *Id.* Similar to the plaintiff in *Vuyyuru*, Plaintiff has not attached a QWR or pled any facts describing why her account contained an error or why the corrections she requested in her QWR were appropriate. *Id*; *see also Boston v. Ocwen Loan Servicing, LLC*, No. 3:12CV452, 2013 WL 122151, at *3 (W.D.N.C. Jan. 9, 2013) (dismissing plaintiff's RESPA claim in part because the plaintiff did not attach any documents evidencing her QWR or provide "any specific information about her alleged requests that would satisfy the statutory definition of a QWR"). For these reasons, her RESPA claim is dismissed.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 7.) is GRANTED and Plaintiff's claims are DISMISSED.

A separate Order follows.


Dated: October 4, 2017

_____/S/_____
Richard D. Bennett
United States District Judge